Burke, J.
As a result of a notorious juvenile gang conflict in July of 1957, Michael Farmer was stabbed to death on tbe grounds of Higbbridge Park, in tbe Washington Heights area of northern Manhattan. In 1958 tbe two appellants were convicted therefor of murder in. tbe second degree. After these convictions were affirmed by tbe Appellate Division (19 A D 2d 80), tbe Court of Appeals remitted tbe case to tbe trial court for a Huntley inquiry into tbe voluntariness of defendants’ confessions (15 N Y 2d 722). Horton and Alvarez now appeal both from tbe affirmance of their original convictions and from tbe affirmance of tbe finding of voluntariness in the subsequent Huntley hearing (25 A D 2d 720). We are presented with no convincing reasons to upset either of these determinations.
Without reiterating all the facts of this well-known crime, we dismiss as groundless Horton’s contention that bis conviction is not factually supported in the trial record. While there might not have been sufficient evidence to prove premeditation on the part of. either defendant, an element which is unnecessary for second degree murder, there certainly was enough evidence for the jury to have found the requisite intent to kill, existence of which can be inferred from the totality of conduct of the accused. (McKenna v. People, 81 N. Y. 360 [1880].) the evidence that appears in the record of the stabbings by the two defendants is amply sufficient for the jury to have concluded that each of them took part in this fatal attack with the design to effect the death of their victim. (People v. Monaco, 14 N Y 2d 43 [1964].)
In claiming that be has been denied a fair and impartial trial, Alvarez contends that there was a deliberate and systematic exclusion of persons of Puerto Bican origin in the selection of the special jury panel. His claim is founded solely upon the showing that at the time of bis trial some 13.4% of the population of New York County was of Puerto Bican origin, and only *360 one such, person was on the panel from which the trial jury was selected. This does not, of itself, indicate a prima facie denial of equal protection. Since there is no evidence of any deliberate, intentional or systematic exclusion of any particular race, appellant’s position is untenable. (People v. Agron, 10 N Y 2d 130, 140-141 [1961].) Our ruling in Agron, equally applicable here, was that a mere showing of imbalance on one particular jury panel does not, without more, demonstrate a denial of a particular defendant’s right to equal protection. Here there is neither direct evidence of exclusion of a particular racial group nor evidence of a long-continued pattern of exclusion which prompted the United States Supreme Court’s determinations in Patton v. Mississippi (332 U. S. 463 [1947]), and Norris v. Alabama (294 U. S. 587 [1935]). (See Hoyt v. Florida, 368 U. S. 57 [1961].)
As to the Huntley determination that the defendants’ confessions were voluntary beyond a reasonable doubt, it is now suggested that, after the case has been pending in our courts for over eight years, it be again remitted for a second Huntley inquiry due to some offhand remarks published in a book co-authored by the Trial Judge and due to a technical error regarding the admissibility of evidence which in no way resulted in prejudice to the accused. Such a remission would constitute a needless protraction of a criminal proceeding already unduly delayed and in effect would thwart, rather than aid, the expedient administration of justice.
At the outset it must be noted that the presiding Judge at the Huntley hearing, the same Judge who had conducted the original trial, properly understood the function of such a hearing, a fact indicated by his determination: “On all the facts presented on the trial, and on the supplementary [Huntley] hearing, the Court finds that the confessions of Horton and Alvarez were freely and voluntarily made. They were not the product of threats, beatings or coercion of any kind, either by the police or by the Assistant District Attorney.”
It is alleged, however, that a reversal is dictated for the reason that the Judge refused to consider evidence that the authorities failed to advise the defendants of their rights to counsel and to remain silent. That this ruling constituted error is unquestionable, since such facts are relevant to the issue of *361 voluntariness. (See Miranda v. Arizona, 384 U. S. 436 [1966]; Johnson v. New Jersey, 384 U. S. 719 [1966]; Davis v. North Carolina, 384 U. S. 737 [1966].) Nevertheless, it is inconceivable that any prejudice could have resulted to the accused under the facts and circumstances of this case. In accordance with our opinion in People v. Huntley (15 N Y 2d 72 [1965]), the Judge to whom the hearing was assigned was the same Trial Justice who had presided at the original lengthy (over five weeks) trial of the defendants in 1958. Therein the issue of voluntariness had been exhaustively litigated, including the very issue here involved, i.e., the failure of the authorities to effectively apprise the accused of their constitutional rights. At the Huntley hearing the entire seven-volume trial record, containing all the testimony relevant to this point, was offered by the People and accepted into evidence by the court. Consequently, despite the formal refusal of the court to consider the defendants ’ evidence, the very same proof was actually received into evidence through its inclusion in. the trial record. It was obviously considered by the court. No prejudice could, therefore, have been suffered by the defendants, and to reverse and remit for a new Huntley inquiry because of this technical error would merely frustrate the effective administration of justice and unnecessarily prolong an already lengthy criminal proceeding.
Finally, it is argued that a new Huntley hearing is required because of the failure of the hearing Judge to disqualify himself. It appears that, subsequent to the termination of the trial of the defendants and their five codefendants in 1958 (two of whom were convicted of second degree manslaughter and three of whom were acquitted), the Trial Judge co-authored a book describing the celebrated trial (Davidson and Gehman, The Jury Is Still Out [Harper & Bros., 1959]). Appellants allege that in preparing this publication the Judge obtained posttrial information concerning the voluntariness of the defendants’ confessions (citing pp. 96, 148 and 167), and that he, therefore, abused his discretion as a matter of law in failing to disqualify himself from presiding at the Huntley hearing. Nowhere is it argued that this information was false or even true but prejudicial. Rather, the singular basis for appellants’ motion to disqualify was that it was unsworn “testimony” acquired in *362 an extra-judicial capacity. Not only is there nothing to indicate that the Jndge' was influenced by this nonjnridical data, but also a careful examination of the trial record illustrates that these posttrial remarks of police officers simply paraphrased the prolonged testimony elicited at the trial and reintroduced m toto at the subsequent Huntley inquiry (including sworn testimony as to the co-operation of Alvarez in the investigation). Moreover, the accuracy of these remarks was sworn to at the hearing itself. Consequently, in light of the Appellate Division’s unanimous affirmance, it cannot now be said as a matter of law that the Judge abused his discretion in denying the motion to disqualify.
In accordance with the tenor of Davis v. North Carolina (384 U. S. 737, supra [1966]), from a close scrutiny of the entire record as presented on this appeal, we conclude, as did the courts below, that neither of the confessions involved herein was the product of a “ will overborne. ’ ’
The judgments of conviction, and the orders of the Appellate Division affirming the determination of the Huntley hearing, should be affirmed.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Scileppi, Bergan and Keating concur.
Judgments, as amended, affirmed.