Arthur W. Lonschein, J.
The defendant was indicted by the Queens County Grand Jury on March 25, 1975, charged with criminal possession of a weapon in the third degree and resisting arrest. Following arraignment on the indictment, he moved, inter alla, for a dismissal of the indictment on the ground that the Grand Jury which returned the indictment was chosen from a panel which exempted women from service and thus was violative of his right to be indicted by a Grand Jury which was impartial and drawn from a fair cross section of the community. The defendant based his argument then and argues now that his position is supported by the United States Supreme Court in the landmark decision, Taylor v Louisiana (419 US 522), decided January 21, 1975. Therein, the highest court held that a Louisiana conviction could not stand where the jury panels were made up under a statutory scheme that virtually eliminated women as jurors. Claiming that former subdivision 7 of section 599 of the Judiciary Law, granting to women an automatic exemption from jury service is in direct conflict with Taylor v Louisiana (supra), the defendant argues that he stands in the same position as those defendants charged and tried under the Louisiana laws which was struck down by the United States Supreme Court.
The motion came on to be heard by Honorable Frank D. O’Connor, a Justice of this court, on June 4, 1975, and on June 10, 1975, Mr. Justice O’Connor ordered that a hearing be held to determine the constitutionality of the Grand Jury that indicted this defendant.
Prior to any hearing, the People now move for leave to reargue the defendant’s motion seeking to declare the March, 1975 Grand Jury to be illegally constituted and that the defendant’s motion be denied in toto and thus deny the defendant a hearing. The grounds for the motion to reargue, according to the papers submitted, are found in the decision of *929 the Court of Appeals in People v Parks (41 NY2d 36). Therein, the court held former subdivision 7 of section 599 of the Judiciary Law to be constitutional and not in conflict with the prohibitions set forth in Taylor v Louisiana (supra).
Mr. Justice O’Connor, subsequent to his decision of June 10, 1975, had been appointed by the Governor of this State as an Associate Justice of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department. This motion therefore, comes to me for decision and both parties have consented and agreed that I take jurisdiction of this motion to reargue the original decision of Mr. Justice O’Connor. In doing so, I shall make my decision not as a review of the original decision; of Mr. Justice O’Connor for error, but to do what I believe Mr. Justice O’Connor would have done in the light of the law decided subsequent to that decision.
In People v Parks (supra), our highest court, in distinguishing our statute from the Louisiana statute, pointed out that in New York, under former subdivision 7 of section 599 of the Judiciary Law, women were summoned to serve and thereafter could exercise their exemption. The condemned Louisiana statute, however, "prevented a woman from being selected for jury service unless she had previously filed with the clerk of the court a written declaration of her desire to be subject to jury service.” (People v Parks, supra, p 42.) Thus in Louisiana, a woman had to volunteer for jury service in the prescribed manner to be eligible to be summoned in the first instance whereas in New York, a woman had a right to an exemption once summoned.
In the oral argument before this court, defense counsel stated that it was not his contention that any particular group in the community was being discriminated against or excluded from Grand Jury service. Rather, he contends that a Grand Jury selection process that depends soley upon the volunteering of the veniremen is unconstitutional. He reads Taylor (supra) to support the theory that where the burden of taking an affirmative action to serve on a jury is placed upon the entire community, it is an unconstitutional selection process. His argument in sum is that voluntary service is the same as systematic exclusion even though applied to the whole community because only certain groups will in fact volunteer for such Grand Jury service.
In his papers in opposition to the motion to reargue, the *930 defendant submits the result of interviews with the Deputy County Clerk of Queens County in charge of jurors, Mr. John F. Kenna. The court accepts the averments of the interviews as true. Mr. Kenna says that: (1) Grand Jury service in Queens County is voluntary; (2) applicants for Grand Jury service are solicited to volunteer from persons called and qualified as petit jurors and from other volunteers who present themselves to the clerks; (3) those jurors who were called and who possessed exemptions (e. g., women) exercised their exemptions prior to the time when the remaining jurors were asked to volunteer for Grand Jury service; (4) that after an investigation for any felony convictions or misdemeanor convictions involving moral turpitude, the County Clerk compiles a list of approximately 1,750 names constituting the Grand Jury list for the following year. Thus, the 1975 Grand Jury pool was selected in the year 1974; (5) the County Clerk does not maintain records or data reflecting the social, economic, racial, sexual or ethnic breakdown of those who volunteer, qualify and serve on Grand Juries in Queens.
Taylor v Louisiana (supra) condemns the deliberate exclusion of a particular community group or class of persons from jury service. (People v Parks, supra.) Thus, the standard by which a claim of an illegally constituted jury panel is to be measured is whether the defendant has submitted proof sufficient to establish the intentional and systematic discrimination in the jury selection process. (People v Parks, supra; People v Chestnut, 26 NY2d 481, 488; People v Horton, 18 NY2d 355, 359; People v Agron, 10 NY2d 130, 141.)
The proof submitted by the defendant does not point to any kind of a deliberate or intentional exclusion of any group or class. Everyone, including women may volunteer and the fact (if it is a fact), that certain groups may predominate or be lacking in Grand Juries does not justify a declaration that such a Grand Jury is illegally constituted.
The list of grand jurors which made up the 1975 pool was selected from a constitutionally acceptable pool of petit jurors (see Daniel v Louisiana, 420 US 31; Hoyt v Florida, 368 US 57) and from outside volunteers who were qualified to serve upon a petit jury. The statutes for the selection of grand jurors were applied equally to all persons who were qualified to serve regardless of group or class. Where statutes are applied equally to all qualified persons regardless of group or class insofar as participation in the administration of justice is *931 concerned and they ignore all distinctions between citizens arising merely from race, color, sex, economic and social groups, they are constitutional. (Matter of Wood, 140 US 278; Brown v Allen, 344 US 433, reh den 345 US 946; Carter v Jury Comm., 396 US 320.)
The motion to reargue is granted. Upon reargument, the defendant’s motion to declare the Grand Jury which returned the indictment to be illegally constituted is denied in all respects.