■ RUTH MILLNER, Appellant, v. ACHITOB MILLNER, Respondent.— Two orders of the Supreme Court, New York County, entered on July 25, 1972 and October 6, 1972, respectively, unanimously affirmed, without costs and without disbursements, and without prejudice to such further action as plaintiff may seek to pursue for arrears or for alleged unpaid health care and house repair bills. Concur — Stevens, P. J., Markewich, Kupferman, Murphy and Capozzoli, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LEE M. TRAVERS, Appellant.— Judgment, Supreme Court, New York County, rendered January 21, 1972, convicting defendant, after a jury trial, of attempted rape in the first degree, assault in the second degree and possession of a weapon, unanimously reversed, on the law and as a matter of discretion in the interest of justice and a new trial directed. Defendant, a young employee of a well-known life insurance company, was charged with attempting to sexually assault his victim, at knifepoint, in a stairwell of the building where she resided. The actual rape was avoided by the quick wit of the intended victim and the fortuitous presence of two neighbors in the hallway. Some 18 days later, the victim saw defendant in the storefront office where he was employed and identified him as the perpetrator. He was also identified by three other witnesses who had but a brief opportunity to observe him at or about the time the crime was committed. Two of these witnesses also picked out defendant at a lineup. However, examination of the photographs of the lineup discloses that the other participants bore little or no resemblance to the description given of the attacker. Defendant testified in his own behalf and denied culpability. He asserted that he was working in his office at the critical time. His contention was supported by three alibi witnesses — his sister and two coemployees. The prosecutor sought to impeach the alibi testimony through cross-examination and rebuttal witnesses; and met with some success. During cross-examination the prosecutor made extensive use of sworn statements taken from the alibi witnesses. When the first such statement was used, defense counsel asked for permission to inspect it. The application was denied. No similar requests were thereafter made during the cross-examination of the other witnesses; presumably in the belief that they would be futile. Although the Trial Justice allowed defense counsel to inspect that portion of the witness' statement which was actually used, we believe the "right sense of justice" which prompted the holdings in *People* v. *Rosario* (9 N Y 2d 286) and *People* v. *Malinsky* (15 N Y 2d 86) required that these statements be turned over to defense counsel for inspection. In *People* v. *Regina* (19 N Y 2d 65), the Court of Appeals upheld the trial court's refusal to allow defense counsel to see the statement of an alibi witness. Unlike the situation at bar, however, it does not appear that such statements were used in *Regina*. The statements were merely marked for identification and the court observed that "[u]pon cross-examination by the prosecution, these witnesses were in no way impeached". The situation was quite different here. On the record before us, it cannot be ascertained whether other portions of these statements could have been used by defense counsel to explain any seeming testimonial inconsistencies or for rehabilitation purposes. In a close case such as this, we deem the denial of defense counsel's request to examine the statements given by the alibi witnesses to the prosecutor, and used by him for impeachment purposes, prejudicial error. Concur — Nunez, J. P., Kupferman, Murphy and Steuer, JJ.